1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Celeo Echenique,                    ) | CV 06-278-TUC-CKJ (JCG) |
| Plaintiff,                    ) | **REPORT and RECOMMENDATION** |
| vs.                    ) | |
| Tucson Unified School District,                    ) | |
| Defendant.                    ) | |

Pending before the Court is Defendant's Motion for Summary Judgment filed on August 31, 2007. (Doc. No. 34.)  Plaintiff filed a response on October 2, 2007 (Doc. No. 44) and Defendant timely replied.  (Doc. No. 46.)  This Court granted Defendant permission to supplement its Motion for Summary Judgment (Doc. No. 45); Defendant filed its supplement on October 22, 2007.  (Doc. No. 47.)  Plaintiff filed a response to the supplement on October 31, 2007 (Doc. No. 51) and Defendant timely replied.  (Doc. No. 52.)

Also pending before the Court is Plaintiff's Motion for Summary Judgment filed on August 31, 2007.  (Doc. No. 36.)  Defendant filed a response on October 22, 2007 (Doc. No. 47) and Plaintiff timely replied.  (Doc. No. 51.)

Plaintiff, Celeo Echenique ("Echenique"), claims national origin discrimination and retaliation pursuant to Title VII of the Federal Civil Rights Act of 1964, 42 U.S.C. §2000(e-2

et. seq.),[1] as well as negligent infliction of emotional distress, negligent retention and negligent supervision under Arizona law.  Defendant, Tucson Unified School District ("TUSD"), argues that Echenique's claims must be dismissed because Echenique cannot prove the elements of his claims.  Echenique contends that, based on the undisputed facts before the Court, he is entitled to judgment as a matter of law  on each of his claims.

Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Guerin for a Report and Recommendation.  (Doc. No. 13.)  The Magistrate recommends that the District Court, after its independent review of the record, enter an order granting TUSD's Motion for Summary Judgment on all claims and denying Echenique's Motion for Summary Judgment.

**Factual and Procedural Background[2]**

Echenique was born in Honduras and is Hispanic.  (DSOF 1; PSOF 13.)[3]  He was hired by TUSD in 1995 as a custodian.  (PSOF 2; DRSOF pg. 2 at 2.)   Echenique later worked as a plumber apprentice, and as an HVAC apprentice, before being employed by TUSD as an HVAC mechanic in 2001.  (PSOF 3-4; DSOF 3-4.)  As an HVAC mechanic, Echenique supported the HVAC systems in nine schools and three administrative buildings.  (DSOF 5.)  Alex Roman was a foreman in the HVAC Department and acted as Echenique's

---

[1] In its Motion for Summary Judgment, TUSD notes that Echenique has also alleged his unlawful discrimination claims under the Arizona Civil Rights Act, A.R.S. § 411401 *et seq.*  Review of Echenique's complaint, however, indicates that Echenique's discrimination claims were asserted solely under federal law.

[2] Echenique did not file a separate statement of facts in support of his Response to TUSD's Motion for Summary Judgment, as required by LRCiv 56.1(b).  Pursuant to LRCiv 56.1(b), the facts set forth in TUSD's Statement of Facts are deemed admitted by Echenique for purposes of TUSD's Motion, because those facts were not controverted by correspondingly numbered paragraphs in a separate statement of facts filed by Echenique.

[3] Citations to the TUSD's Statement of Facts in Support of Motion for Summary Judgment (Doc. No. 35) are abbreviated herein as "DSOF," citations to the Echenique's Statement of Facts in Support of Motion for Summary Judgment (Doc. No. 37) are abbreviated herein as "PSOF," and citations to TUSDs Statement of Facts in Support of Response to Echenique's Motion for Summary Judgment (Doc. No. 48) are abbreviated herein as "DRSOF." Because DRSOF contains both "Defendant's Response Statement of Facts" and "Defendant's Response to Plaintiff's Statement of Facts," each beginning with a paragraph numbered "1," citations to DRSOF include both a page and paragraph number.

1    supervisor during the time that Echenique was employed as an HVAC mechanic.  (PSOF 4;

2    DSOF 7.)  Larry Toddy was the HVAC Department Supervisor from 2000 to 2006; as such

3    he supervised Alex Roman and acted as the second line supervisor for the HVAC mechanics,

4    including Echenique, who reported directly to the foremen.  (DSOF 8-10.)

5          According to Echenique, between 2001 and 2003, there were several incidents in

6    which he was offended by Toddy or Roman.  (PSOF 7-14; DRSOF pgs. 5-9 at 7-14.)  On

7    several occasions, Echenique complained to Toddy's indirect supervisor, Frank Urbina,

8    regarding unspecified issues with the HVAC shop.  (PSOF 7; DRSOF pg. 5-6 at 7.)  In

9    March, 2002, Echenique complained to Urbina that Roman suggested to Echenique that he

10   had offered to work late because Echenique "just want[ed] to stay here just to give me some

11   ass."  (PSOF 8; DRSOF pg. 6 at 8.)  Urbina required Roman to apologize to Echenique in

12   writing.  (PSOF 9; DRSOF pg. 6 at 9.)

13         In July, 2002, Echenique was disciplined by Toddy for arriving late to work;

14   Echenique felt offended by the wording used in Toddy's disciplinary memorandum, which

15   asked Echenique to "keep this childish crap to a minimum."  (PSOF 10; DRSOF pgs. 6-7 at

16   10.)  Echenique responded by writing a letter to Toddy in which he complained that Toddy

17   did not appreciate or recognize the hard work of Echenique and his co-workers, that Toddy

18   had created a hostile work environment and that Echenique was suffering work-related stress

19   as a result.  (PSOF, Ex. 9.)  In response to Echenique's letter, Toddy wrote a letter to

20   Echenique in which he accused Echenique of complaining of harassment every time

21   deficiencies in Echenique's job performance were brought to Echenique's attention.  (PSOF,

22   Ex. 10.)  Echenique also testified that on several occasions, Toddy and Roman referred to

23   Echenique as "dropping out of the banana boat."  (DSOF, Ex. 1, pg. 56.)   According to

24   Echenique, working under Toddy and Roman was unpleasant for everyone in the HVAC

25   Department, so much so that several HVAC employees have left the HVAC Department.

26   (DSOF, Ex. 1, pgs. 236-238.)

27         Echenique testified that he began to feel like he didn't want to go to work because no

28   matter how hard he worked, Toddy was never happy with him.  (DSOF, Ex. 1, pgs. 34-35.)

He decided to start looking into how his work situation could be made better. (*Id*.)  To that end, sometime prior to July 31, 2003, Echenique called the TUSD Legal Department to ask who he could talk to about problems he was having with the HVAC Department. (DSOF, Ex. 1, pg. 36.) Echenique contacted the Legal Department because he had working relationships with its staff, having serviced the HVAC system in their office.  (*Id*.)  The employee in the Legal Department with whom Echenique spoke asked Echenique if he thought he was being targeted because he was Hispanic, to which Echenique answered "No, I'm not sure, but you know, I don't see this behavior in somebody else in the shop except me." (*Id*.)  The employee in the Legal Department then told Echenique that he/she could not give Echenique legal advice, but would refer Echenique to Nancy Woll.  (*Id*.)

Nancy Woll is a licensed attorney.  (DSOF 13.)  From 1997 to 1999, she worked for TUSD as an EEO Specialist.  (DSOF 15, 17.)  From June, 2003 to September, 2003, Woll worked in a temporary position in TUSD's legal department with responsibility for the Equity Development Office; as such she was responsible for investigating discrimination complaints.  (DSOF 18, 19.)  She became TUSD's EEO Compliance Officer in September, 2003.  Sometime between July 23 and July 29, 2003, Echenique called Woll and asked to meet with her.  (DSOF 30.)  During the phone call, Echenique made a statement about his supervisor "discriminating" against him.  (*Id*.)  Woll agreed to meet with Echenique in order to determine whether there might be a problem that fell within her jurisdiction.  (*Id*.)

Woll met with Echenique on July 31, 2003.  (DSOF 32.)  During the meeting, Echenique told Woll that Toddy had been making comments about having been in a high security prison and that Echenique found the comments intimidating and uncomfortable. (DSOF 33.)  Echenique also told Woll that he was given harder areas to work, and that once he cleaned up those areas they were given to less experienced mechanics.  (DSOF 34.) Echenique complained that Toddy used vulgar language in the workplace.  (DSOF 35.) Echenique does not remember whether he told Woll that he felt discriminated against. (DSOF, Ex. 1, pg. 53.)  He does not remember saying anything to Woll about his nationality. (DSOF, Ex. 1, pg. 59.)  Echenique did not complain to Woll about Roman.  (DSOF, Ex. 1,

4

pg. 158.)  Woll testified that she asked Echenique specific questions to determine whether he believed that any of Toddy's comments or conduct had anything to do with Echenique's ethnicity or origin, and that Echenique stated he did not believe so.  (DSOF, Ex. 5.)  According to Woll, Echenique did not provide her with any information that suggested he was the victim of unlawful discrimination, and therefore Woll concluded that she did not have jurisdiction over Echenique's complaints. (DSOF 43, 45.)  At the end of the meeting, Woll told Echenique that she did not believe Echenique had identified any discrimination and that she did not have jurisdiction over his concern, but that she believed there was a problem, so she was going to try and set up a meeting with Facilities.  (DSOF 47.)  Echenique responded "Fine, that's what I want."  (DSOF 48.)

Immediately after Woll met with Echenique, she called Alex Gallego, the Director of Facilities, and told him that Echenique had reported concerns about his treatment by Toddy. (DSOF 60.)  Shortly after speaking with Woll, Gallego met with Urbina, Toddy and Roman at the Facilities Office.  (DSOF 61.)  During that meeting, Gallego explained to Woll had told Gallego that Echenique had met with Woll that morning to complain that Toddy had been using vulgar language and telling the HVAC employees about his (Toddy's) time in prison. (DSOF 61.)  Gallego advised the others to refrain from speaking about Toddy's history of incarceration at all; Gallego advised Toddy to conduct himself professionally and to ensure that there was a witness present whenever he had a conversation with Echenique.  (DSOF 62.)

On August 6, 2003, Toddy held a staff meeting at which Echenique and the entire HVAC staff were present.  (PSOF 21; DSOF 63.)  During the meeting, Toddy told the employees that someone had "gone to 1010" (the address of the TUSD administrative office) and complained that Toddy had been talking about being in jail.  (*Id*.; DSOF 64.) Toddy told the group that his history was not anyone else's business "unless I'm trying to have sex with you in the cage."  (PSOF 21; DSOF 63.)   Toddy also stated that he thought that the individual who had gone to 1010 was a coward and that he had no respect for that person. (PSOF 21; DSOF 63.)  Toddy testified that he made these comments because he believed that

1    Echenique had gone outside the chain of command and made personal comments against him

2    to TUSD administrators.  (DSOF 67-68.)  According to Toddy, when he made his comments

3    on August 6 he was aware only that Echenique had complained about Toddy's boasting of

4    his jail time and Toddy's vulgar language.  (DSOF 71.)

5         After the August 6, 2003 meeting, Echenique contacted Woll and filed a complaint

6    alleging that Toddy's comments constituted retaliation for Echenique having previously filed

7    a complaint with Woll.  (PSOF 22; DSOF 73.)  Woll accepted jurisdiction of Echenique's

8    August 6, 2003 complaint because she regarded it as a retaliation complaint under TUSD

9    Governing Board Policy 4315.  (PSOF 24; DSOF 74.)  Woll first attempted to arrange a

10   mediation, in which Toddy and Echenique agreed to participate.  (DSOF 76.)  However,

11   Echenique began a disability leave of absence on August 6, 2003, and Woll therefore decided

12   to conduct a formal investigation into Echenique's complaint.  (PSOF 24; DSOF 76.)  Woll

13   interviewed six HVAC mechanics and two HVAC foreman about Toddy's comments at the

14   August 6, 2003 meeting.  (PSOF 26; DSOF 77.)  Woll's investigative report states that

15   Echenique made a discrimination complaint on July 31, 2003, that Toddy retaliated against

16   Echenique for making the complaint, and that Toddy's comments violated Policy 4315.

17   (DSOF, Ex. 7.)  Policy 4315 states "retaliation is any adverse treatment of an individual

18   because he or she filed a discrimination or harassment complaint, or participated in any

19   manner in the investigation of such a complaint. . . . Retaliation, intimidation or harassment

20   is strictly prohibited and will not be tolerated."  (*Id*.)  Although Woll's report states that

21   Echenique complained of discrimination on July 31, 2003, Woll stated in her affidavit that

22   Echenique's July 31, 2003 complaint had nothing to do with discrimination, but that she

23   interpreted Policy 4315 to mean that any employee complaint made to her office was subject

24   to the Board's policy against retaliation.  (DSOF, Ex. 5.)  Woll's report did not include any

25   analysis of Echenique's complaint as a Title VII claim.  (DSOF, Ex. 7.)

26        Following Woll's investigation, Toddy was issued a written reprimand and required

27   to attend a training session with Woll regarding retaliation and TUSD's complaint

28   procedures.  (DSOF 85-87.)  On October 22, 2003, Woll met with the non-supervisory

employees in the HVAC Department to reiterate TUSD's policy against retaliation, to inform the employees that Toddy's remarks were inappropriate and against Board policy, to encourage employees to come forward with any concerns regarding unlawful discrimination, and to reaffirm TUSD's committment to protecting employees from retaliation. (DSOF 88.)

Echenique took medical leave from August 6, 2003 until October 1, 2003. (PSOF 24; DSOF pgs. 13-14 at 24; DSOF 94-95.) On his Disability Leave Income Protection Claim form, Echenique stated that he was "under stress, caused by line of supervision and chain of command situation starting about 8-2002 till now." (PSOF 24; DRSOF pgs. 13-14 at 24.) Echenique's primary care physician recorded on the form that Echenique had "severe anxiety and depression," that Echenique should not go back to work in the same place and that Echenique should avoid confrontation. (*Id*.) Echenique's primary care physician referred Echenique to a psychiatrist for further evaluation and placed Echenique on medical leave until October 1, 2003. (PSOF 24; DRSOF pg. 14 at 24.) Echenique was also referred by TUSD's Employee Assistance program to be evaluated on August 7, 2003 by Dr. Robert Rencken. (PSOF 25; DRSOF pg. 14 at 25.) Dr. Rencken diagnosed Echenique as being in a "highly-stressed state, with marked anxiety, acute depression, and exhibiting physical symptoms, including multiple gastroenterological problems." (*Id*.)

On August 19, 2003, Echenique filed a workers' compensation claim. (DSOF 118.) The claim was denied and Echenique did not appeal the denial. (DSOF 119.)

Once his primary care physician approved him to return to work for light duty,[4] Echenique was assigned to work in the mail room. (PSOF 28-29; 95-96.) He received the same compensation and worked the same hours in the mail room as he had as an HVAC mechanic. (DSOF 99.) He did not report to, or have any interaction with, Toddy. (DSOF 97.) Although the mail room was near the HVAC Department, Echenique saw Toddy only

---

[4] Echenique claims that his physician permitted Echenique to return to work on the condition that he not work with or near Toddy. (PSOF 28.) However, the release signed by Echenique's physician says only that Echenique is permitted to return to work on light duty. (PSOF, Ex. 19.) The suggestion that Echenique not work near Toddy was proposed by Innovative Risk Management, which sent a release form to the physician, and implicitly adopted by the physician when he signed the release. (*Id*.)

7

1   twice, and did not speak to him or interact with him.  (DSOF, pgs. 16-17 at 28.)

2          In late October, 2003, Echenique was cleared to return to normal duties.  (DSOF 101.)

3   He was transferred from the mail room to the position of Building Engineer at Palo Verde

4   High School on October 27, 2003. (DSOF 102.)  Echenique's pay grade and step level, and

5   hours, were the same in his new Building Engineer position as they had been when

6   Echenique worked as an HVAC mechanic.  (DSOF 103.)

7          In November, 2003, Scott Holmes, the manager of the Energy Management and

8   Control Systems Department ("EMCS"), sent an email  (recipient unknown) stating that he

9   would like to have Echenique work in his shop.  (PSOF Ex. 20.)  Echenique was interested

10  in the transfer, however there was no open position in EMCS at the time.  (PSOF 30; DSOF

11  pg. 17 at 30.)  After April, 2004, when an EMCS position became available, Echenique did

12  not apply for it because he did not want to go back to HVAC or Facilities.  (DSOF pg. 17 at

13  30.)

14         On February 23, 2004, Urbina sent Echenique a memorandum stating that he would

15  be re-assigned to the HVAC Department as of March 1, 2004, and that he would be

16  supervised there by Roman.  (DSOF 110.)  Echenique refused to return to the HVAC

17  Department because he did not want to work with Toddy or Roman.  (DSOF 111.)  In order

18  to determine the precise nature of Echenique's work restrictions and to accommodate them,

19  TUSD asked Echenique to submit to a Fitness for Duty exam with Dr. Jensine Wright, M.D.

20  at Tucson Occupational Medicine.  (PSOF 33; DSOF pg. 18 at 33.)  When Dr. Wright

21  concluded that it would be medically safe for Echenique to work on unrestricted duties so

22  long as he was not supervised by Toddy (DSOF, Ex. 14), TUSD sent Echenique for an

23  Independent Psychiatric Medical Exam with psychiatrist Michael Kuntzelman, M.D.  (PSOF

24  34; DSOF pg. 19 at 34.)  Dr. Kuntzelman concluded that Echenique's psychological

25  difficulties were a direct result of his conflict with Toddy.  (*Id*.)  Based on these evaluations,

26  TUSD concluded that Echenique could not work in the HVAC Department but could return

27  to work as a Building Engineer at Palo Verde High School.  (PSOF 35.)

28         On February 5, 2004, counsel for Echenique sent TUSD a notice of claim pursuant

to A.R.S. § 12-821.01.  (DSOF, Ex. 19.)  It alleged that Echenique had suffered discrimination, harassment, retaliation and a hostile work environment since meeting with Woll on July 31, 2003.  (*Id*.)  The notice of claim further alleged that Toddy verbally attacked Echenique on August 6, 2003, and that Echenique had been improperly transferred to a new position for which he had minimal training.  (*Id*.)  The notice of claim asserted legal theories of retaliation under Title VII and the ACRA and negligent infliction of emotional distress. (*Id*.)

On February 6, 2004, Echenique filed a retaliation charge with the EEOC.  (PSOF, Ex. 21.)  The charge alleged that Echenique had been retaliated against, in violation of Title VII and the Americans with Disabilities Act, for filing discrimination and/or retaliation complaints, that TUSD had denied Echenique's workers' compensation in retaliation for those complaints, that Echenique had been placed in a position not commensurate with his education and qualifications, and that Echenique had been denied placement in a shop that had requested him. (*Id*.)

On April 29, 2004, Echenique was offered the permanent position of Building Engineer at Palo Verde High School.  (DSOF 104.)  His letter of reinstatement stated that Echenique was not being returned to his previous job in the HVAC Department because TUSD had been informed the Echenique was not medically permitted to work under Toddy. (DSOF 105.) Echenique accepted the Building Engineer position on April 29, 2004. (DSOF 107.)  Since that time, Echenique has never requested a transfer back to the HVAC Department. (DSOF 109.)  Although Echenique believes that he is not qualified to work as a Building Engineer (PSOF 36), he testified that he possesses all of the qualifications necessary to perform his duties, and he remains in that position to this day.  (DSOF pgs. 20-21 at 36-37; TUSD's Motion, pg. 5.)

On July 29, 2005, the EEOC issued a determination letter which concluded that Echenique had made a discrimination complaint to Woll in July, 2003, that Toddy had retaliated against Echenique by verbally intimidating and harassing Echenique, and that TUSD had retaliated against Echenique by removing him from the HVAC Department while

Toddy continued to work there.  (PSOF, Ex. 26.)

Echenique has had no interaction with Toddy since August, 2003.  (DSOF 113.)  In 2006, Toddy moved to the position of project manager for the Engineering Department; Roman took over Toddy's position as HVAC Department Supervisor and remains in that position today.  (DSOF 8, 12.)

On July 5, 2006, Echenique filed a Complaint in the United States District Court, District of Arizona. (Doc. No. 1.)  The Complaint alleges five counts: Count 1, national origin discrimination in violation of Title VII; Count 2, retaliation in violation of Title VII; Count 3, negligent infliction of emotional distress; Count 4, negligent retention; and Count 5, negligent supervision. (*Id.*)

### Summary Judgment Standard

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party moving for summary judgment initially must demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325, 106 S. Ct. at 2553-54.  The moving party merely needs to point out to the Court the absence of evidence supporting its opponent's claim; it does not need to disprove its opponent's claim. *Id.*; *see also* Fed. R. Civ. P. 56(c).

1    If a moving party has made this showing, the nonmoving party "may not rest upon the

2    mere allegations or denials of the adverse party's pleading, but . . . must set forth specific

3    facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  *See also*

4    *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514; *Brinson v. Linda Rose Joint Venture*, 53 F.3d

5    1044, 1049 (9th Cir. 1995).  The nonmoving party may not "replace conclusory allegations

6    of the complaint or answer with conclusory allegations of an affidavit."  *Lujan v. National*

7    *Wildlife Federation*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990).

8                                            **Discussion**

9    In its Motion, TUSD argues that summary judgment in its favor is appropriate because

10   (1) Echenique failed to exhaust his administrative remedies with respect to his discrimination

11   claim, (2) Echenique has not presented a material issue of fact with respect to his retaliation

12   claim, (3) Echenique's state law claims are untimely and barred by the exclusivity provisions

13   of Arizona's workers' compensation laws.  Echenique disputes TUSD's assertions and

14   argues that he is entitled to summary judgment on each of his claims.  The Magistrate

15   recommends finding that TUSD is entitled to summary judgment on all Echenique's claims.

16   **I.    TUSD is entitled to summary judgment on Echenique's claim of national origin discrimination**.

17
18   TUSD argues that Echenique failed to exhaust his administrative remedies with

19   respect to his discrimination claim.  Echenique contends that he is entitled to summary

20   judgment on his discrimination claim.  Because the Court concludes that Echenique failed

21   to exhaust his administrative remedies with respect to his discrimination claim, the Court

22   does not consider the claim on the merits.

23   In order to prevail on a Title VII discrimination claim, Echenique  must demonstrate

24   that he has exhausted his administrative remedies such that this Court has subject matter

25   jurisdiction over his claim.  *See Vasquez v. City of Los Angeles*, 349 F.3d 634, 644 (9th Cir.

26   2001).  The jurisdictional scope of a Title VII claimant's court action depends upon the scope

27   of both the EEOC charge and the EEOC investigation. *See Sosa v. Hiraoka*, 920 F.2d 1451,

28   1456 (9th Cir. 1990).  Therefore, incidents of discrimination not included in an EEOC charge

may not be considered by a federal court unless the new claims are like or reasonably related

11

to the allegations contained in the EEOC charge.[5]  *Id.*  In determining whether an allegation under Title VII is like or reasonably related to allegations contained in a previous EEOC charge, the Court inquires whether the original EEOC investigation would have encompassed the additional charges. *See Kaplan v. International Alliance of Theatrical and Stage Employees and Motion Picture Machine Operators*, 525 F.2d 1354, 1359 n. 3 (9th Cir.1975), *abrogated on other grounds by Laughon v. International Alliance*, 248 F.3d 931 (9th Cir. 2001). "Where claims are not so closely related that agency action would be redundant, the EEOC must be afforded an opportunity to consider disputes before federal suits are initiated." *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 730 (9th Cir.1984).

Echenique's national origin claim is difficult to decipher.  In his Complaint, Echenique alleges that he filed a discrimination complaint (presumably referring to his July 31, 2003 meeting with Woll), then complained a second time that he was being discriminated against (presumably referring to his August 6, 2003 complaint to Woll), and that Echenique was transferred to a new work area against his will.  (Complaint, Doc. No. 1, pgs. 4-5.) When TUSD filed a Motion to Enforce Echenique's agreement to dismiss Count 1, Echenique filed a response brief which suggested that his discrimination claim involved discrimination that Echenique suffered both before and after his July 31, 2003 meeting with Woll. (Doc. No. 40.)  In his Motion for Summary Judgment, Echenique appears to allege that he suffered discrimination on the basis of his national origin before his July 31, 2003 meeting with Woll when Toddy and Roman referred to him as "dropping out of the banana boat" and when Toddy made other, unspecified remarks about Hispanics.  (Echenique's Motion for

---

[5] Generally, EEOC charges are liberally construed if they are "made by those unschooled in the technicalities of formal pleading." *B.K.B. V. Maui Police Department*, 276 F.3d 1091, 1100 (9th Cir. 2002.)  Echenique asserts that he is entitled to this deferential standard of review because his incomplete EEOC charge resulted from the fact that Echenique is a native Spanish speaker unfamiliar with the EEOC administrative process.  This assertion is not supported by the record, however: Echenique's deposition and his written communications with TUSD make clear that Echenique has no English-language limitations, and that Echenique was represented by his current counsel at the time he filed his EEOC charge.  (DSOF 120; DRSOF 1; PSOF Exs. 1, 9, 13.)  Accordingly, the Court is not inclined to regard Echenique's EEOC charge with the extra deference afforded to *pro se* complainants.

12

1   Summary Judgment, pg. 11.)   Echenique also claims in his Motion that he suffered

2   discrimination on the basis of his national origin after his July 31, 2003 meeting with Woll:

3   he identifies Toddy's August 6, 2003 staff meeting, TUSD's decision to require Echenique

4   to undergo psychological evaluation, TUSD's decision to assign Echenique to the mail room

5   and TUSD's decision to offer Echenique a permanent position as a Building Engineer as

6   incidents of discrimination. (*Id.*, pgs. 11-12.)   At oral argument, Echenique argued that each

7   incident of national origin discrimination occurred after he filed his EEOC charge on

8   February 6, 2004, in which case only TUSD's decision to offer Echenique the permanent

9   position of Building Engineer at Palo Verde High School could possibly be considered as an

10  incident of discrimination.

11          On its face, Echenique's EEOC charge does not include a discrimination claim.   In

12  the section of the charge form labeled "Discrimination Based On," Echenique marked only

13  the "retaliation" box.  *See Vasquez*, 349 F.3d at 645; *BKB*, 276 F.3d at 1100 (referring to the

14  boxes checked on an EEOC complaint when evaluating the nature of the complaint).   The

15  charge alleged that Echenique had been retaliated against, in violation of Title VII and the

16  Americans with Disabilities Act, for filing discrimination and/or retaliation complaints, that

17  TUSD had denied Echenique's workers' compensation in retaliation for those complaints,

18  that Echenique had been placed in a position not commensurate with his education and

19  qualifications, and that Echenique had been denied placement in a shop that had requested

20  him. (*Id.*)   The charge does not include any allegation that Echenique suffered an adverse

21  employment action causally linked to his membership in a protected group.

22          To the extent that Echenique intends Count 1 to state a claim for discrimination

23  arising from events that occurred before July 31, 2003, Echenique has failed to exhaust his

24  administrative remedies.   Based on the charge that Echenique filed, the EEOC conducted an

25  investigation into whether TUSD retaliated against Echenique following his July 31, 2003

26  meeting.   The EEOC was not presented with any allegations which would prompt it to

27  examine whether Echenique was discriminated against on the basis of his national origin

28  prior to July 31, 2003.   For example, the EEOC was not made aware of Echenique's claim

13

that  Toddy and Roman referred to him as "dropping out of the banana boat," nor was the EEOC made aware of Echenique's claim that Toddy made other, unspecified remarks about Hispanics. These allegedly discriminatory incidents may have prompted Echenique to request the July 31, 2003 meeting that ultimately lead to the events which Echenique considers retaliatory, but they were not communicated to the EEOC officer and they are not "so closely related that agency action would be redundant."

Echenique has also failed to exhaust his administrative remedies with respect to any claim for discrimination arising from events that occurred after July 31, 2003.  Although some of the facts giving rise to that claim are sufficiently alleged in the EEOC charge – such as Toddy's August 6, 2003 remarks and Echenique's transfer to Palo Verde High School – the EEOC only investigated those events in terms of whether they constituted retaliation.  In order for the EEOC to determine whether those events were also adverse employment actions taken against Echenique because of his national origin, the EEOC would need to make additional findings, including whether Echenique was a member of a protected class[6] and whether similarly situated individuals outside of Echenique's protected class were treated more favorably.  *See Fonseca v. Sysco Food Services of Arizona, Inc*., 374 F.3d 840 (9th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Echenique's discrimination claim is not reasonably related to the retaliation claim set forth in his EEOC charge.[7]  Accordingly, the Magistrate recommends granting summary judgment in favor of TUSD on Echenique's national origin discrimination claim.

## II.   TUSD is entitled to summary judgment on Echenique's claim of retaliation

In order to state a prima facie case of employment retaliation under Title VII, Echenique must  show that (1) he engaged in a protected activity, (2) TUSD subjected him

---

[6] Echenique's EEOC charge does not mention that Echenique is Hispanic or from Honduras, and the EEOC's findings include no mention of Echenique's race or national origin. (PSOF Ex. 26.)

[7] In addition, the record is completely devoid of any evidence tending to prove that TUSD intended to discriminate against Plaintiff on the basis of his national origin when it offered him a permanent position as a building engineer at Palo Verde High School.

to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action.  *See Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000) (citing *Steiner v. Showboat Operating Co.*, 25 F.1459, 1464 (9th Cir. 1994)).  Once Echenique has established a prima facie case, the burden of production shifts to TUSD to articulate some legitimate, non-retaliatory reason for the adverse action.  *See Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003).  If TUSD articulates such a reason, Echenique bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive. *See Ray*, 217 F.3d at 1240.  In the present case, Echenique's claim for retaliation must fail because Echenique did not engage in a protected activity.  In the alternative, Echenique's retaliation claim also fails because Echenique has not established a causal link between his allegedly protected activity and the allegedly adverse employment action.  Finally, Echenique's retaliation claim fails because even if Echenique established a prima facie case of retaliation, TUSD has articulated legitimate, non-retaliatory reasons for the adverse action and Echenique has failed to demonstrate that those reasons were pretextual.  Because TUSD has demonstrated deficiencies in Plaintiff's retaliation claim as a matter of law, Plaintiff cannot prevail on his motion for summary judgment on that claim.

### A.    Echenique did not engage in a protected activity

Title VII prohibits employers from taking adverse action against employees who oppose an employment practice that is in and of itself a violation of Title VII.  42 U.S.C. §2000e-3(a); *see also Moyo v. Gomez*, 40 F.3d 982, 985 (9th Cir. 1995) (citing *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012 (9th Cir.1983)).  Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to "oppose[ ]" an employer's discriminatory practices. *See* 42 U.S.C. § 2000e-3(a).  It is not necessary that the employment practice actually be unlawful; opposition clause protection will be accorded whenever the opposition is based on a reasonable belief that the employer has engaged in an unlawful employment practice.  *See Moyo,* 40 F.3d at 985.

The only activity that Echenique alleges as a protected activity within the meaning of

Title VII is Echenique's July 31, 2003 meeting with Woll, at which Echenique claims that he reported that Toddy was discriminating against him on the basis of his national origin.[8] There is no evidence before the Court, however, from which a jury could conclude that Echenique actually alleged discrimination during his meeting with Woll. Echenique testified at his deposition that he told Woll that Toddy's comments about being in a high security prison made him feel uncomfortable and that he believed Toddy was unfairly accusing him of not doing his job. (DSOF, Ex. 1, pgs. 36, 37.) Echenique also complained that he was assigned areas to work that had a lot of problems, and that after he fixed the problems he was removed from the area and someone else who did not work as hard as him would be assigned that area and have an easy time. (*Id.* at pg. 50.) Echenique could not remember whether he told Woll that he believed he was being discriminated against on the basis of his national origin. (*Id.* at 53-62.) Woll stated in an affidavit that although Echenique referenced discrimination on the telephone when setting up his meeting with Woll, during the meeting Echenique described only workplace issues. (DSOF, Ex. 5.) According to Woll, Echenique did not provide any information during the meeting which suggested to Woll that Echenique was the victim of unlawful discrimination, despite the fact that Woll asked Echenique specific questions to determine whether Echenique believed that Toddy's comments or conduct were related to Echenique's ethnicity or national origin. (*Id.*)

Echenique has failed to identify a genuine issue of material fact with respect to TUSD's claim that his meeting with Woll was not a protected activity. Echenique argues that he offered testimony in support of his claim that he discussed discrimination with Woll. The only such testimony occurred, however, toward the end of his deposition, when Echenique testified over his attorney's objection that he may have told Woll that he had been discriminated against because he was Hispanic and from Honduras. (DSOF, Ex. 1, pg. 146.) That testimony contradicted Echenique's earlier deposition testimony that he had not mentioned discrimination during his meeting with Woll. (*Id.*) Echenique cannot create a

---

[8] Echenique's Statement of Facts alleges incidents prior to July 31, 2003, when Echenique complained about his supervisors; however, Echenique's complaints related to his working environment and did not include claims of discrimination. (PSOF at 7.)

1    genuine issue of material fact sufficient to defeat a motion for summary judgment by

2    contradicting his prior testimony.  *See Radobenko v. Automated Equipment Corp.*, 520 F.2d

3    540, 544 (9th Cir. 1975).[9]  Echenique also claims that his meeting with Woll was a protected

4    activity within the meaning of Title VII because Woll determined it to be one.  At the close

5    of her investigation, however, Woll concluded only that her July 31, 2003 meeting with

6    Echenique was a protected activity within the meaning of TUSD Governing Board Policy,

7    not Title VII.  (DSOF, Ex. 4, pgs. 45-46.)  Finally, Echenique cites to *Winarto v. Toshiba

8    America Electronics Components, Inc.*, 274 F.3d 1276, 1285 (9th Cir. 2001) in support of his

9    claim that *any* complaint filed with an employer's human resource office is a protected

10   activity.  The plaintiff in *Winarto*, however, reported physical and verbal sexual harassment

11   – prohibited by Title VII – to Human Resources, and these reports were considered protected

12   activity.  The Court's holding did not extend to *any* complaint filed with an employer.

13          Because Echenique's July 31, 2003 meeting with Woll was not an opposition to a

14   Title VII violation, and because Echenique did not reasonably believe that it was, Echenique

15   cannot establish the "protected activity" element of his retaliation claim, and the Magistrate

16   therefore recommends granting summary judgment in favor of TUSD on this claim.

17          **B.**   **Echenique cannot establish a causal link between the allegedly protected
               activity and Toddy's remarks regarding Echenique's meeting with Woll;**
18             **TUSD has articulated legitimate, non-retaliatory reasons for asking**
               **Echenique to submit to psychological evaluations and placing Echenique**
19             **in the position of Building Engineer**

20          In the alternative, the Court concludes that Echenique has failed to state a claim for

21   retaliation because the adverse employment actions that Echenique allegedly suffered as a

22   result of his meeting with Woll were either not related to the meeting or were justified by a

23   legitimate, non-retaliatory motive.  Echenique alleges that he suffered three adverse actions

24   as a result of his meeting with Woll: (1) Toddy held a staff meeting in which he publicly

25   berated an employee for having complained to Woll about him, (2) TUSD required

26

27          [9] Notably, at oral argument Echenique's counsel claimed that Echenique deliberately
     omitted a claim of national origin discrimination in the EEOC charge because incidents of such
28   discrimination occurred only after the charge was filed.  This concession supports TUSD's
     evidence that Echenique failed to raise this claim with Ms Woll.

Echenique to submit to psychological evaluations before returning to work, and (3) TUSD placed Echenique in a Building Engineer position upon his return to work.  Assuming for the sake of argument that each of these incidents constituted an adverse employment action, Echenique's retaliation claim nonetheless fails.

> i.   *Toddy's comments were not causally linked to Echenique's alleged discrimination complaint.*

In order to state a prima facie case for retaliation, Echenique must make some showing sufficient for a reasonable trier of fact to infer that TUSD was aware that Echenique had engaged in protected activity.  *See Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003).  At the time Toddy made his comments during the August 6, 2003 staff meeting, he had been informed only that Echenique had complained to Woll that Toddy was talking about having been incarcerated and using vulgar language.  (DSOF 61-62; 71-72.)  At the August 6, 2003 staff meeting, Toddy had no reason to believe that Echenique had alleged any type of unlawful discrimination against him.  Echenique therefore cannot establish a causal link between any protected conduct and Toddy's admittedly unprofessional remarks.[10]

> ii.   *TUSD had a legitimate, non-discriminatory reason for requiring Echenique to undergo psychological evaluations.*

The two other adverse employment actions that Echenique allegedly suffered as a result of his meeting with Woll were justified by legitimate, non-retaliatory motives.  Echenique claims that TUSD retaliated against him by requiring him to submit to psychological evaluations before returning to work.  The facts before the Court indicate, however, that Echenique and his treating physician claimed that Echenique could not return to work in HVAC because Echenique would suffer psychological harm if required to work under Toddy.  (DSOF 90-91.)  TUSD claims that it asked Echenique to submit to the evaluations in order to determine the precise nature of Echenique's work restrictions and to accommodate them.  Accordingly, TUSD asked Echenique to submit to a Fitness for Duty

---

[10] Echenique appears to have conceded this argument, having not addressed it in his Response to TUSD's Motion for Summary Judgment or in his Reply to TUSD's Response to Echenique's Motion for Summary Judgment.

exam with Dr. Jensine Wright, M.D. at Tucson Occupational Medicine. (PSOF 33.)  When Dr. Wright concluded that it would be medically safe for Echenique to work on unrestricted duties so long as he was not supervised by Toddy. (DSOF, Ex. 14.)  TUSD sent Echenique for an Independent Psychiatric Medical Exam with psychiatrist Michael Kuntzelman, M.D. (PSOF 34.)  Dr. Kuntzelman concluded that Echenique's psychological difficulties were a direct result of his conflict with Toddy.  (*Id.*)  Based on these evaluations, TUSD concluded that Echenique could return to work as a Building Engineer at Palo Verde High School. (PSOF 35.)  The evaluations allowed TUSD to honor Echenique's requested restriction and place him in a position that did not require him to interact with Toddy.  TUSD analogizes its decision to require Echenique to undergo psychological evaluation to an employer's right to conduct fitness for duty examinations of employees to determine their ability to perform job-related functions as part of the reasonable accommodation process set forth in the Americans with Disabilities Act. *See* 29 C.F.R. § 1630.14(c).  Thus, TUSD has articulated a legitimate, non-discriminatory reason for requiring Echenique to undergo psychological evaluations.

> iii.   *TUSD had a legitimate, non-discriminatory reason for transferring Echenique to a new position.*

Echenique claims that TUSD retaliated against him by transferring him to a Building Engineer position once he was cleared to return to normal work.  TUSD argues, however, that it transferred Echenique to the Building Engineer position because Echenique and his medical providers told TUSD that Echenique could not work in the same department as Toddy, and Echenique refused to work for either Toddy or Roman.  (DSOF 91; PSOF 32.) Thus, TUSD was faced with a choice between transferring both the head of the HVAC Department and a Department supervisor, or transferring Echenique.  TUSD was aware of an open position for Echenique in which Echenique could keep the same pay, hours and benefits; it would have been impossible to transfer both Toddy and Roman to commensurate positions.  (TUSD Motion for Summary Judgment, pg. 13.)  TUSD's decision to transfer

1  Echenique under these circumstances was not retaliatory.[11]  *See Stutler v. Illinois Dept. of*

2  *Corrections,* 263 F.3d 698, 703 (7th Cir. 2001) (holding that transferring a plaintiff away from

3  her supervisor in an attempt to resolve the plaintiff's concerns that her supervisor was

4  retaliating against her for reporting the supervisor's racially discriminatory conduct was a

5  legitimate, non-discriminatory reason for the allegedly adverse employment action).

6      **C.    Echenique has not demonstrated that TUSD's stated reasons for requiring**
7      **Echenique to undergo psychological evaluations and placing Echenique**
        **in a different position are pretextual.**

8          In order to demonstrate that a material issue of fact exists as to whether a stated reason

9  for an adverse employment action was pretextual, Echenique must prove by a preponderance

10  of the evidence that the legitimate reasons offered by TUSD were not its true reasons, but

11  were a pretext for discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530

12  U.S. 133, 143 (2000).  Echenique may attempt to establish pretext by either direct evidence

13  that proves the fact of discriminatory animus without inference or presumption, or by indirect

14  evidence tending to prove that the employer's proffered explanation is unworthy of credence.

15  *See Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (citing *Texas*

16  *Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981).  If Echenique relies on indirect

17  evidence tending to prove that TUSD's stated reasons are unworthy of credence, such

18  evidence must be "specific" and "substantial" in order to survive summary judgment.  *Id.*

19          Echenique has not presented direct or indirect evidence of pretext.  In his pleadings,

20  Echenique's entire argument on this point consists of one sentence: "Even if TUSD's

21  proffered reasons were accepted as legitimate and non-discriminatory, the nature and scope

22  of TUSD's actions against Echenique – who was made to suffer physically and mentally

23

24          [11] In addition, it is unlikely that Echenique's transfer from the HVAC Department to a
    Building Engineer position bearing the same salary, hours and pay grade and necessitated by
25  doctor's orders constituted an adverse employment action.  *See Burlington Northern and Santa*
    *Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2416 (2006) (holding that a transfer is an adverse
26  employment action if it would have been materially adverse to a reasonable employee); *Steiner*
    *v. Showboat Operating Co.,* 25 F.3d 1459, 1465 n.6 (9th Cir. 1994) (stating that a lateral transfer
27  is an adverse employment action only if it has some materially negative impact on the
    employee).  Although courts disfavor transferring a person who is the subject of unlawful
28  discrimination or retaliation, as noted above, Echenique has not demonstrated either.

because he filed two complaints for discrimination and retaliation – can only be characterized as pretextual."  (Echenique's Motion for Summary Judgment, pg. 14.)  This argument, unsupported by citation to the record or to case law, does not amount to "specific" and "substantial" evidence of pretext.[12]  At oral argument, Echenique offered, for the first time, an elusive argument that the fact that Plaintiff underwent psychological evaluation at TUSD's requests is somehow, in and of itself, proof of pretext.  The Court finds no merit to this argument.  Accordingly, the Court concludes that TUSD is entitled to summary judgment on Count 2.

**III.     TUSD is entitled to summary judgment on Echenique's state law claims**

TUSD argues that Echenique's state law claims are barred because (1) Echenique's complaint was filed more than one year after his cause of action accrued and therefore the state law claims are time-barred, and (2) Echenique's state law claims are barred by Arizona Workers' Compensation laws.  Echenique moves for summary judgment on the merits of his state law claims.  Because the Court agrees that Echenique's claims are time-barred pursuant to A.R.S. § 12-821, it does not consider TUSD's alternate argument regarding Arizona Workers' Compensation laws or the merits of Echenique's state law claims.

Echenique's claims are time barred pursuant to A.R.S. § 12-821, which provides that "all actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward."  A cause of action "accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage."  *See* A.R.S. § 12-821.01(B).

Echenique, through his attorney, gave notice of his claim pursuant to A.R.S. § 12-

---

[12] Echenique makes much of the fact that Woll concluded in her investigative report that Echenique had been retaliated against, and that the EEOC found reasonable cause that TUSD had retaliated against Echenique. Woll's findings, however, were strictly limited to whether Toddy had violated the District's Governing Board Policy, not Title VII.  Furthermore, a conclusory EEOC reasonable cause letter, by itself, does not create an issue of material fact. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000).  In fact, here the EEOC's reasonable cause determination was based on the erroneous belief that Echenique made a discrimination complaint to Woll.

821.01(A) on February 5, 2004, however, he failed to initiate this action within one year of filing the claim.  The claim alleged that Echenique had suffered discrimination, harassment, retaliation and a hostile work environment since meeting with Woll on July 31, 2003.  The notice of claim further alleged that Toddy verbally attacked Echenique on August 6, 2003, and that Echenique had been improperly transferred to a new position for which he had minimal training.  The notice of claim asserted legal theories of retaliation under Title VII and the ACRA and negligent infliction of emotional distress.

Echenique failed to file his complaint in this Court until June 5, 2006.  The complaint presents the same factual allegations contained in Echenique's notice of claim and presents state law claims for negligent infliction of emotional distress, negligent retention and negligent supervision arising from those factual allegations.[13]  Thus, Echenique's claims against TUSD accrued, at the latest, by February 5, 2004, when Echenique sent his notice of claim to TUSD, because it is evident that by February 5, 2004, Echenique believed that he had been damaged and believed that he knew the source of that damage.  Echenique was therefore required, pursuant to A.R.S. § 12-821, to file his federal action on or before February 5, 2005.  Because Echenique missed this deadline by sixteen months, his state law claims are time-barred.

## IV.   TUSD is not entitled to its attorneys' fees incurred with respect to Echenique's state law claims

TUSD argues that it is entitled to its attorneys' fees and costs pursuant to A.R.S. § 12-

---

[13] TUSD argues that, because Echenique never submitted a notice of claim asserting causes of action for negligent retention or negligent supervision, those claims are also subject to dismissal pursuant to A.R.S. § 12-821.01(A).  However, no Arizona case has specifically determined whether the word "claim" in A.R.S. § 12-821.01(A) refers to a particular legal theory "upon which liability is claimed" or simply references the claimant's broader claim for relief. *See Mutschler v. City of Phoenix*, 129 P.3d 71, 73 n.4 (Ariz. App. 2006).  It is therefore unclear whether Arizona law required Echenique to specifically identify his negligent retention and negligent supervision claims in his notice of claim prior to including those claims in his federal action, given that the claims arise out of the same facts as the other legal theories alleged in Echenique's notice of claim.  (As a footnote to this footnote, Echenique's assertion on pages 15-16 of his Response to TUSD's Motion for Summary Judgment that his claims for negligent supervision and negligent retention did not arise until after he filed his notice of claim is disingenuous, given that Echenique's Complaint is based on the same factual allegations as his notice of claim, and given that on page 17 of his Response Echenique contends that his claims for negligent retention and negligent supervision arise directly from conduct related to his retaliation and discrimination claims.)

349(A)(1), which states that "the court shall assess reasonable attorney fees [and] expenses . . . against an attorney or party . . . if the attorney or party . . . brings or defends a claim without substantial justification."  "Without substantial justification" is defined as a claim that "constitutes harassment, is groundless and is not made in good faith."  *See* A.R.S. § 12-349(F).

On July 25, 2007, TUSD's counsel sent a letter to Echenique's counsel pointing out that Echenique's state law claims were untimely under A.R.S. § 12-821.  (DSOF, Ex. 20.) The letter was a follow-up to a telephone conversation that apparently occurred between the opposing attorneys in November, 2006.  (*Id.*)  In the July 25, 2007 letter, TUSD's counsel argued that it was frivolous for Echenique to pursue time-barred claims and asked Echenique's counsel to dismiss the claims or risk a motion for fees should TUSD prevail on summary judgment. (*Id.*)  In response, Echenique's counsel wrote a letter to TUSD's counsel on August 1, 2007, in which Echenique's counsel refused to dismiss the state law claims on timeliness grounds.  (DSOF, Ex. 21.)  Echenique's counsel summarily claimed that because Echenique continued to suffer emotional distress, his state law claims were not untimely. (*Id.*)

An attorney's decision to pursue a claim despite opposing counsel's warning that opposing counsel considers the claim to be without merit may not, in and of itself, be grounds for attorneys' fees pursuant to A.R.S. § 12-349(A)(1).  However, when TUSD made good on its promise to move for summary judgment on Echenique's state law claims on the ground that the claims were time-barred, Echenique did not even respond to the argument in his Response to the Motion for Summary Judgment.  Echenique's Response argues only that he was not required to include his negligent retention and negligent supervision claims in his notice of claim; Echenique does not so much as acknowledge TUSD's contention that Echenique'federal action was filed sixteen months too late.   The fact that Echenique apparently does not possess a counter-argument to TUSD's claim that Echenique's state law claims are time-barred supports a finding that Echenique pursued groundless state law claims.  Despite this lack of professionalism, however, TUSD is not entitled to its fees

23

pursuant to A.R.S. § 12-349(A)(1), because the statute requires that all three elements –

harassment, groundlessness and lack of good faith – be present to support a fee award. *See*

*Phoenix Newspapers, Inc. v. Department of Corrections*, 188 Ariz. 237, 244, 934 P.2d 801,

808 (App. 1997).  In the present case, Echenique's state law claims were clearly time-barred

and therefore groundless, but there is insufficient evidence before the Court from which the

Court could conclude that Echenique pursued those claims in bad faith in order to harass

TUSD.  Accordingly, TUSD is not, based on the current record before the Court, entitled to

recover its fees pursuant to A.R.S. § 12-349(A)(1).

The Court notes, however, that Echenique's counsel's conduct regarding his clearly

untimely state law claims is highly unprofessional.  Particularly disturbing to this Court is

the fact that this is not the first case in which Echenique's counsel has pursued obviously

groundless state law claims in a Title VII action.  In *St. George v. Home Depot*, 2006 WL

3147661 (2006), the Arizona District Court held that Echenique's counsel pursued negligent

hiring and negligent supervision claims despite the fact that the claims were groundless under

well-established Arizona law and despite the fact that defense counsel had warned

Echenique's counsel that the claims were groundless.  As in this case, the court concluded

that it was unable to award attorneys' fees to the defendant because the defendant had not

proven all three elements of A.R.S. § 12-349.  Given the facts of this case and Echenique's

counsel's prior conduct, the Court strongly admonishes Echenique's counsel. The Court

further notes that, although an award of attorney fees pursuant to A.R.S. §12-349 may not

be appropriate, TUSD may be able to seek an award under other applicable statutes if it

prevails in this action.

### Recommendation

The Magistrate Judge recommends the District Court, after its independent review of

the record, enter an order GRANTING TUSD's Motion for Summary Judgment on all of

Echenique's claims (Doc. No. 34), and DENYING Echenique's Motion for Summary

Judgment. (Doc. No. 36.)

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within

24

1    10 days of being served with a copy of this Report and Recommendation.  If objections are

2    not timely filed, they may be deemed waived. The parties are advised that any objections

3    filed are to be identified with the following case number: **CV 06-278-TUC-CKJ.**

4         DATED this 7th day of December, 2007.

5

6

7

8                                      Jennifer C. Guerin
                                 United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                           25